**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CHRYSTLE FIEDLER,

                 Plaintiff,

         -against-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                 Defendant.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-532 (ADS)

**APPEARANCES:**

**Office of Christopher James Bowes**
*Attorneys for the Plaintiff*
54 Cobblestone Drive
Shoreham, NY 11786
       By: Christopher James Bowes, Esq., Of Counsel

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Defendants*
610 Federal Plaza
5th Floor
Central Islip, NY 11722]
       By: Kenneth M. Abell, Assistant United States Attorney

**SPATT, District Judge.**

On January 24, 2014, the Plaintiff Chrystle Fiedler (the "Plaintiff") filed this appeal of a

decision dated August 20, 2012 pursuant to Section 205(g) of the Social Security Act (the

"SSA"), as amended, 4 U.S.C. 405(g). That decision denied the Plaintiff's application for Social

Security Disability ("SSD") Benefits under Sections 216(i) and 223(d) of the SSA.

On September 8, 2014, the Commissioner of Social Security (the "Commissioner")

moved, and the Plaintiff cross-moved, for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure ("Fed. R. Civ. P.") 12(c). For the reasons set forth below, the Commissioner's

motion is denied; the Plaintiff's cross-motion is granted in part; the judgment of the Commissioner is reversed in part; and the case is remanded for further administrative proceedings.

# I.     PROCEDURAL HISTORY

On September 13, 2011, the Plaintiff filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on July 1, 2010. Transcript ("Tr.") at 29.  She alleged a disability due to a traumatic injury to the second trigeminal nerve in her face and atypical neuralgia.  She also alleged a disability due to Lyme disease.

 On February 16, 2012, the Plaintiff's application was denied, based on reasoning in part that she retained the capacity to resume her previous work as a writer. Tr. at 49-52.  On March 8, 2012, the Plaintiff requested an administrative hearing.

On July 23, 2012, the Plaintiff appeared with counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ") Joseph R. Faraguna.

In a decision dated August 20, 2012, ALJ Faraguna found that the Plaintiff was not disabled. Tr. at 24.  The Plaintiff requested review of the ALJ decision.  On November 20, 2012, the Appeals Council denied the Plaintiff's request for review. Tr. at 1.  This appeal followed.  On September 8, 2014, both parties moved under Fe. R. Civ. P. 12(c) for judgment on the pleadings. In addition, the Plaintiff seeks that this Court approve the contingent fee agreement between her and her counsel under 42 U.S.C. § 406(b) and award the Plaintiff's reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

## II.    FACTUAL HISTORY

A.  Vocational and Non-Medical Evidence

The Plaintiff was born in May 1958. Tr at 104.  She completed college in 1980. Tr. at 166.

From 1993 to 1998, she worked as a television producer. Tr. at 166, 181.  Beginning in September 1999, she was self-employed as a writer. Tr. at 159, 166, 181.  She stated that, as a writer, she contributed articles to national magazines and had written three non-fiction books. Tr. at 159.  In this role, she worked on a computer from a home office and interviewed people over the phone. Tr. at 182.

According to the Plaintiff, her job as a writer required her to sit for six to eight hours a day and to write and type, with no standing or walking. Tr. at 182.  It required her to lift no more than 10 pounds, and it did not require her to supervise other people. Tr. at 182.

On July 1, 2010, the Plaintiff was in a grocery store in Greenport, New York, when an employee collided with her and caused her to sustain a concussion and damaged her second trigeminal nerve, requiring medical treatment since that time. Tr. at 37, 156, 170.  While the Plaintiff was previously able to work six to eight hours a day as a writer, after this injury she could work on her writing at most two hours a day. Tr. 170.

On December 24, 2011, the Plaintiff completed a questionnaire about her ability to function. Tr. at 147-56.  She reported that she prepared light meals, such as sandwiches, and took care of her two dogs and two cats. Tr. at 149.  Also, she drove and shopped. Tr. at 150-51.

However, she stated that she could not do homework and yard work "regularly," and hired someone to help with the yard work. Tr. at 150.  She also indicated that she had no problems using her hands, but that she had difficulty standing and walking due to certain

medications she took, including Percocet regularly and Advil and Morphine as needed. Tr. at 153. The pain medications also caused nausea, tiredness, and difficulty remembering, and concentrating. Tr. at 157, 161. She stated that bending, eating, talking, reaching, and stress aggravated her pain, which "radiate[d] across [the] right side of [her] face into [her] right ear." Tr. at 155. The Plaintiff likened the pain to "a screwdriver [] screwing into [her] upper right jaw" and was painful even with pain medications. Tr. at 156.

The Plaintiff reported that she spent her time watching television or getting bed rest. Tr. 151-52. She stated that standing made her tired and that lifting or any strain would hurt her face. Tr. at 152. She also had difficulty paying attention because of her pain medications. She had to do her chores little by little as best as she could. Tr. at 154.

B. Medical Evidence

On November 4, 2010, a computed tomography scan of the Plaintiff's face revealed minimal right maxillary sinusitis, and degenerative changes of the left temporomandibular joint with a 3 mm cyst within the left mandibular condyle. Tr at 330.

On January 4, 2011, the Plaintiff began treatment with Dr. Philippe Vaillancourt of Chronic Pain Options of Long Island. Tr. at 257-59. The Plaintiff complained of right face pain on the inferior orbital ridge. Physical examination revealed that the Plaintiff carried her head forward, and had cervical hyperlordosis, as well as dorsal spine kyphosis. There was restricted extension of the Plaintiff's back and neck. The Plaintiff also had muscle spasm of her right levator scapula, right upper trapezius, and right sternocleidomastoid.

A neurological examination was unremarkable. Dr. Vaillancourt diagnosed the Plaintiff with inferior orbital nerve neuralgia. The Plaintiff was given a peripheral nerve block injection.

A follow-up examination on January 10, 2011 revealed that the Plaintiff had developed an ecchymosis at the site of her nerve block injection. The Plaintiff continued to experience facial pain. Dr. Vaillancourt prescribed morphine. Tr. at 261. Subsequent examinations revealed that her condition was essentially unchanged.

On January 28, 2011, the Plaintiff returned to Dr. Vaillancourt complaining of facial pain. Dr. Vaillancourt recommended switching to Kadian, or morphine sulfate, and to increase her dosage of Percocet.

On February 9, 2011, Dr. Vaillancourt prescribed Vimpat for the Plaintiff.

On February 24, 2011, a follow-up examination by Dr. Vaillancourt revealed that the Plaintiff's condition had improved, and that she was more functional. Tr. at 267-68.

On March 9, 2011, the Plaintiff was examined by Dr. Uzma Nasir of Chronic Pain Options of Long Island. Tr. at 269-70. The Plaintiff stated that her pain was 20% to 30% improved, but that she was still very uncomfortable.

On March 23, 2011, Dr. Vaillancourt diagnosed her condition as inferior orbital nerve neuralgia. Tr. at 271-72. She was taking Prednisone and reported worse symptoms while on lower dosages. Dr. Vaillancourt continued to recommend a nerve block procedure.

On April 7, 2011, the Plaintiff underwent another right inferior orbital nerve block to address her trigeminal neuralgia. Tr. at 273.

On April 8, 2011, Dr. Vaillancourt noted that the nerve block had been moderately effective, and that the Plaintiff's condition was improved. Tr. at 274-75. She remained on Kadian, Percocet, and Vimpat.

On April 21, 2011, the Plaintiff reported some improvement, but stated that she felt fatigued. Tr. at 276-78. Subsequent examinations revealed that the Plaintiff's condition was essentially unchanged.

On May 5, 2011, Patricia Grant, a certified nurse practitioner at Chronic Pain Options of Long Island, administered a peripheral nerve block at the right infraorbital nerve.

On May 24, 2011, Dr. Vaillancourt reported that the Plaintiff had a fairly good response to the April 7, 2011 nerve block but that she experienced much more severe pain following the May 5, 2011 nerve block. Tr. at 284-85.

On May 26, 2011, Dr. Nasir performed the second right inferior orbital nerve block procedure to address the Plaintiff's trigeminal neuralgia. Tr. at 278.

On June 4, 2011, the Plaintiff stated that she had experienced a better response to treatment, and that her pain was manageable until the day prior to the examination. Ms. Grant noted that the Plaintiff had allodynia over the right inferior orbital ridge.

On June 16, 2011, Dr. Nasir performed the third right inferior orbital nerve block. Tr. at 286.

On July 1, 2011, a follow-up examination by Ms. Grant revealed that the Plaintiff continued to improve. According to Ms. Grant, the Plaintiff's pain was no longer searing and intense. Tr. at 289-90. The Plaintiff reported that she was able to somewhat return to activities that she enjoyed.

On July 15, 2011, Dr. Nasir performed the Plaintiff's fourth right inferior orbital nerve block. Tr. at 291-92.

On August 8, 2011, a follow-up examination by Ms. Grant revealed that the Plaintiff experienced a good response. Tr. at 293-94. The Plaintiff reported that her pain was reduced by

70% since the July 15, 2011 nerve block procedure. Ms. Grant also noted that the Plaintiff's mood, quality of life, and functionality had improved. The Plaintiff also reported that she had returned to writing a novel. She continued to use Percocet as well as morphine. Ms. Grant recommended another nerve block procedure.

On August 12, 2011, Dr. Nasir performed the fourth right inferior orbital nerve block procedure. Tr. at 295-96.

On September 12, 2011, the Plaintiff returned to Dr. Vaillancourt's office where she was seen by Nurse Practitioner Janice McIntyre. Tr. at 297-98. She reported sustained pain reduction of 60%, with improved mood and functionality. It was noted that the Plaintiff's stress level was high due to a deadline for writing a novel. The Plaintiff remained on Percocet, Morphine, and Prednisone. Ms. McIntyre renewed the medications and directed another nerve block procedure.

On October 18, 2011, Ms. Grant noted that the Plaintiff had sustained pain reduction of 40%. Tr. at 301-02. Ms. Grant also noted that the Plaintiff had returned to writing, and intended to enroll in equine therapy. Ms. Grant further noted that the Plaintiff's mood was improved, and that she weaned herself off Morphine. She was only using Percocet for pain. Tr. at 299.

On December 26, 2011, Dr. George Ruggiero, D.O., the Plaintiff's primary care physician, reported that he had treated the Plaintiff for Lyme disease and facial pain due to head trauma. Tr. at 209. Dr. Ruggiero reported that the Plaintiff had no depression, but that her facial pain reduced her mental/cognitive performance. Tr. at 211-12. He also assessed the Plaintiff's residual functional capacity and concluded that she could lift and carry occasionally, stand and/or walk without limitation, and sit without limitation in an eight hour workday. It was also Dr. Ruggiero's opinion that the Plaintiff had a limited ability to push or pull.

On January 2, 2012, Dr. Ruggiero reported that he had diagnosed the Plaintiff with facial neuropathy associated with nausea/vomiting, malaise, mood changes, mental confusion and inability to concentrate. Tr. at 252-55. Dr. Ruggiero also noted that the Plaintiff was experiencing intermittent headaches. According to Dr. Ruggiero, when the Plaintiff had a headache, she would generally be precluded from performing even basic work activities and would need a break from the workplace. It was Dr. Ruggiero's opinion that the Plaintiff was capable of low stress jobs, but that she was likely to be absent from work more than four times a month.

On January 5, 2012, after seeing the Plaintiff, Dr. Ruggiero stated that she was a poor candidate for work as she would have difficulty concentrating and paying attention due to the pain in her head and face. Dr. Ruggiero noted that the Plaintiff was taking Zimthromax for her Lyme disease. Tr. at 314. Dr. Ruggiero felt that the Plaintiff was totally disabled.

On January 17, 2012, a follow-up examination by Ms. Grant revealed that the Plaintiff's facial pain remained stable and manageable. Tr. at 303-04. However, the Plaintiff had begun to complain of right knee pain. Physical examination revealed some positive findings relating to the Plaintiff's right knee. Therefore, the Plaintiff received a right knee ligament injection resulting in symptomatic improvement. Tr. at 304.

On January 20, 2012, the Plaintiff was examined on behalf of the SSA by Dr. Kathleen Acer, a consulting psychologist. Tr. at 217-20. The Plaintiff related a history of occasionally feeling anxious or depressed when under stress, but downplayed its significance. She also stated that since she had been on Prozac, she had been doing fairly well emotionally. A mental status examination revealed that the Plaintiff's speech was rapid and pressured, but that she had adequate expressive and receptive language skills. Her affect was anxious, and her mood was

nervous. The Plaintiff's gait, posture, and motor behavior were normal. Her eye contact was appropriately focused. The Plaintiff's thought processes were coherent and goal-oriented. She was alert and oriented. The Plaintiff's attention, concentration, and memory were intact. Her intellectual skills were found to be above average. Dr. Acer noted that the Plaintiff could dress, bathe, groom herself, cook, clean, do laundry, shop, manage her finances, and drive. Dr. Acer diagnosed the Plaintiff with a dysthymic disorder.

Dr. Acer concluded that the results of her evaluation appeared to be consistent with some long-standing psychiatric issues which were well controlled with medication and which were not interfering on a daily basis. It was Dr. Acer's opinion that the Plaintiff might have some difficulty dealing with stress. However, according to Dr. Acer, the Plaintiff could follow and understand instructions; appropriately perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently.

On February 7, 2012, the Plaintiff's medical record was reviewed by Dr. Y Burstein, a state agency psychological consultant. In an assessment of the Plaintiff's residual functional capacity, Dr. Burstein concluded that the Plaintiff had "moderate" limited abilities to understand, remember, and carry out detailed instructions. Tr. at 236. Dr. Burstein indicated that the Plaintiff had no other significant limitations of work-related mental functioning. According to Dr. Burstein, the Plaintiff had mild restrictions of her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and had experienced one or two episodes of decompensation of extended duration.

On February 14, 2012, a follow-up examination by Ms. Grant revealed that the Plaintiff's knee pain was improved. Tr. at 305. Ms. Grant described the Plaintiff's facial pain as stable and

manageable with medication. However, she noted that the Plaintiff's medication interfered with her ability to function, focus, and concentrate.

On March 12, 2012, a follow-up examination by Ms. Grant revealed that the Plaintiff's condition was stable, and that her knee pain was minimal. Tr. at 307-308. Ms. Grant performed a neurological examination, and noted that the Plaintiff's allodynia had improved. Tr. at 307.

On April 15, 2012, Dr. J. C. Billinghurst, a physician for the SSA, reviewed the medical evidence related to the Plaintiff's physical complains and opined that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and push and pull without limitation. Tr. at 243, 251.

On April 24, 2014, Dr. Alvin Smith, Ph.D., a state agency psychologist, reviewed the medical evidence related to the Plaintiff's mental complaints, and agreed with Dr. Burstein's opinion. Tr. at 248.

On June 6, 2012, the Plaintiff returned to Dr. Ruggiero, complaining of worsened facial pain and jaw pain. Tr. at 318. The Plaintiff stated that she had been having stress with her work contracts. Tr. at 318. The results of a physical examination were essentially unremarkable. Dr. Ruggiero concluded that the Plaintiff was experiencing a Lyme disease flare, hypothyroidism, depression/anxiety, traumatic neuropathy/facial pain, and hypertension. Tr. at 318. Dr. Rugierro renewed the Plaintiff's prescription of Prozac for her anxiety. Tr. at 318.

On July 9, 2012, the Plaintiff returned to Dr. Ruggiero and stated that her facial pain was worse since her last visit. Her facial pain was a "10" on a scale of 1 to 10 without Percocet and Morphine, and "7" with those medications. The remainder of examination was essentially

unremarkable. Dr. Ruggiero diagnosed the Plaintiff with a Lyme's disease exacerbation, neuropath, a rash of unknown origin, and stable depression/anxiety.

C. The Analytical Framework for Determining Disability Under the SSA

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A), a plaintiff must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004). The Act also provides that the impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.

Federal regulations set forth a five-step analysis that the ALJ must follow when evaluating disability claims, including: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a "severe" medically determinable physical impairment which will impair the claimant from doing basic work activities; (3) whether the claimant's severe medical impairment, based solely on medical evidence, is a limitation that is listed in Appendix 1 of the regulations; (4) an assessment of the claimant's Residual Functional Capacity ("RFC") and ability to continue past relevant work despite severe impairment; and (5) an assessment of the claimant's RFC along with age, education, and work experience. As to the last stage of the inquiry, the burden shifts to the SSA to show that the claimant can perform alternative work. See 20 C.F.R. §§ 404.1520, 416.920.

When proceeding through this five-step analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of

pain and disability; and the claimant's educational background, age, and work experience. Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).

D.  The ALJ's Decision

In a decision dated August 20, 2012, ALJ Faraguna denied the Plaintiff's claim for benefits, concluding that the Plaintiff was not under a "disability" as defined under the SSA. Initially, ALJ Faraguna found that the Plaintiff met the insured status requirements of the SSA through December 31, 2015. Tr. at 16.

Then, under the five-step sequential process outlined above, ALJ Faraguna first found that the Plaintiff had not engaged in "substantial gainful activity" since the alleged onset of disability on July 1, 2010. Tr. at 18.

Proceeding to step two, ALJ Faraguna found that the Plaintiff's medically determinable impairment of right inferior orbital nerve neuralgia and Lyme disease were "severe." Tr. at 18.

However, ALJ Faraguna found that the Plaintiff's dysthymic disorder did not cause more than minimal limitation in her ability to perform basic mental activities, and, was therefore "non-severe." Tr. at 18.  In this regard, ALJ Faraguna found that the Plaintiff had a mild limitation with respect to the activities of daily living; social functioning; or concentration, persistence, or pace. Tr. at 18-19.  The Plaintiff experienced no episodes of decompensation which were of an extended duration. Tr. at 19.

Advancing to step three, ALJ Faraguna concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

ALJ Faraguna then found that, based on the entire record, the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations, namely difficulty concentrating at times and tolerating high degrees of stress. Tr. at 19. In making that finding, ALJ Faraguna considered the opinion evidence, plus "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. at 19.

Specifically, ALJ Faraguna found that while the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible "to the extent they [we]re inconsistent with the above residual functional capacity assessment." Tr. at 20. ALJ Faraguna further found as follows:

> As for the opinion evidence, Dr. Burstein never had the opportunity to personally examine the [Plaintiff] or to review the evidence submitted after he rendered his opinion. Therefore, Dr. Burstein's opinion was not given great weight. The [ALJ] notes, however, that Dr. Burstein's opinion was consistent with the opinion of Dr. Acer, and was essentially uncontradicted, although there was no evidence in the record that the [Plaintiff] has ever experienced an extended period of decompensation. Dr. Acer personally examined the [Plaintiff] and her opinion was well supported by the record. Therefore, Dr. Acer's opinion was given great weight. A nurse practitioner is not an acceptable medical source. Therefore, Ms. Grant's opinion was not given great weight. Dr. Ruggiero personally examined the [Plaintiff] on numerous occasions and his opinion regarding the [Plaintiff]'s physical limitations was consistent with the record. Therefore, Dr. Ruggiero's opinion was given substantial weight. Dr. Ruggiero's opinion regarding the [Plaintiff]'s mental limitations, however, was contradicted by the opinions of Dr. Acer and Dr. Burstein, and was not fully supported by the record including the [Plaintiff]'s statements regarding her activities. In addition, opinions regarding whether or not a [Plaintiff] is "disabled" are reserved to the Commissioner of the Social Security Administration. Therefore, Dr. Ruggiero's opinion was not controlling.
>
> In sum, the above residual functional capacity is supported by the opinions of Dr. Acer and Dr. Burstein, and in regard to the [Plaintiff]'s physical limitations, the opinion of Dr. Ruggiero. The residual functional capacity assessment is also supported by the [Plaintiff]'s testimony and statements about her activities of

daily living.  For example, the [Plaintiff] told Dr. Acer that she was able to perform activities such as going on the computer, managing her own finances, shopping and driving.  Furthermore, the record shows that the [Plaintiff] returned to writing on a professional level approximately one year after the alleged onset of her disability.  Activities at this level are not consistent with an inability to concentrate and perform any substantial gainful activity.

Tr. at 23.

Proceeding to step four, ALJ Faraguna found that the Plaintiff was capable of performing her past relevant work as a writer and writer's assistant, which did not require the performance of work-related activities precluded by her residual functional capacity. ALJ Faraguna found that the Plaintiff was able to perform this work, which ranged from sedentary to light exertional in nature, "as actually and generally performed." Tr. at 23.

Therefore, ALJ Faraguna concluded that the Plaintiff was not under a "disability" as defined in the SSA from July 1, 2010 through the date of the decision.

E.  The Appeals Council Decision

In a notice dated November 13, 2013, the Appeals Council denied the Plaintiff's appeal of the ALJ's August 20, 2012 decision. Tr. at 1-3.

## III.    DISCUSSION

A.  The Standard of Review

When a claimant challenges the SSA's denial of disability benefits, a court may set aside the decision only if it is not supported by substantial evidence or was based on legal error. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)(citing 42 U.S .C. § 405(g); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)(per curiam)); see 42 U.S.C. § 405(g)(stating that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

"Substantial evidence" is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)); see also Matthews v. Leavitt, 452 F.3d 145, 152 n. 9 (2d Cir. 2006); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). The substantial-evidence test applies not only to the Commissioner's factual findings, but also to inferences drawn from the facts. See e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because analyzing the substantiality of the evidence must also include that which detracts from its weight. See e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999)(quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)(per curiam)); Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

The Commissioner, not the court, must resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). While the ALJ need not resolve every conflict in the record, Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981), "the crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); cf. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)(holding that the claimant was entitled to an explanation of why the Commissioner discredited her treating physician's disability opinion).

In addition to the consideration of the evidence in the record, a reviewing court must consider the ALJ's application of the law to the record before him. Correale–Englehart v. Astrue, 687 F. Supp. 2d 396, 422 (S.D.N.Y. 2010). The court "reviews *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the [SSA] were based on those principles." Thomas v. Astrue, 674 F. Supp. 2d 507, 520 (S.D.N.Y. 2009).

Since disability-benefits proceedings are non-adversarial in nature, the ALJ has an affirmative obligation to fully develop the administrative record, even when the claimant is represented by counsel. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009); Casino–Ortiz v. Astrue, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007)(citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996)). To this end, the ALJ must make "every reasonable effort" to help an applicant obtain medical reports from his medical sources. 20 C.F.R. §§ 404.1512(d), 416.912(d). Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Casino–Ortiz, 2007 WL 2745704, at *7 (citing 20 C.F.R. § 404.1513(e)(1)-(3)). The ALJ must therefore seek additional evidence or clarification when the "report from [claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

The ALJ must also adequately explain his or her reasoning in making the findings on which his or her ultimate decision rests, and in doing so, he or she must address all pertinent evidence. See e.g., Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Ferraris, 728 F.2d at 586–87; see also Allen ex rel. Allen v. Barnhart, 2006 WL 2255113, at *10 (S.D.N.Y. Aug. 4, 2006)(finding that the ALJ explained his findings with "sufficient specificity" and cited specific

reasons for his decision). An ALJ's "'failure to acknowledge relevant evidence or to explain [his or her] implicit rejection is plain error.'" Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002)(quoting Pagan v. Chater, 923 F. Supp. 547, 556 (S.D.N.Y. 1996)).

B.  The Plaintiff's Arguments

The Plaintiff contends, among other things, that ALJ Faraguna (1) erroneously found that the Plaintiff could return to her past relevant work; (2) ignored evidence that the Plaintiff required treatment with aggressive pain medications; and (3) improperly rejected portions of the opinion of Dr. Ruggiero, the treating physician.

C.  The ALJ Properly Found that Plaintiff Could Perform Her Past Relevant Work as Generally Performed

At step four in the five-step sequential analysis, the ALJ must consider whether the plaintiff has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In order to survive step four, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003)(citations omitted). Here, ALJ Faraguna found that the Plaintiff could perform her past relevant work as a writer and a writer's assistant as "actually and generally performed." (Tr. at 23.)

In determining whether a claimant can perform his or her past relevant work as generally performed, "[t]he inquiry . . . is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(finding that the plaintiff could perform her prior work as a computer operator because she could perform the sedentary

work required of her "previous 'type' of work," even though she could not sit continuously for eight hours as specifically required by her previous job (citation omitted)).

The Dictionary of Occupational Titles ("DOT") is used to describe jobs "as they are generally performed," Jasinski, 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. See 20 C.F.R. § 404.1566(d) (1); see also Petrie v. Astrue, 412 Fed. Appx. 401, 409–10 (2d Cir. 2011)(summary order)(finding that an ALJ can rely on a DOT job classification to characterize plaintiff's past work as "unskilled" without consulting a vocational expert). The DOT classifies the position of writer as skilled, exertionally sedentary work. DOT Code 131.067-046; C.F.R. § 404.1567(a). It requires researching, organizing materials, writing drafts, and reviewing, revising, and correcting written material.

As ALJ Faraguna discussed, there is no evidence that the Plaintiff had any functional limitations that would preclude this type of work. While the Plaintiff had "some difficulty" concentrating at "times" and could not tolerate "high degrees" of stress, (Tr. at 19.), he did not have a significant cognitive or intellectual impairment that would preclude her from performing the tasks described above. In this regard, the Court takes note of the fact that the Plaintiff was able to perform certain activities such as going on the computer, managing her own finances, shopping, and driving. Furthermore, the record revealed that the Plaintiff returned to writing on a professional level approximately one year after the alleged onset of her disability.

The ALJ's finding that the Plaintiff could perform this past relevant work as a writer as generally performed was sufficient to negate a finding of disability at step four. Grogg v. Comm'r of Soc. Sec., 5:11-CV-1381 (NAM)(TWD), 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014). Therefore, it is not necessary for the Court to determine whether the ALJ erred in finding that the Plaintiff could perform her past relevant work as actually performed.

D. The ALJ Failed to Adequately Address the Plaintiff's Subjective Complaints of Pain

As noted above, the Plaintiff proffers additional grounds for reversing the Commissioner's decision. In particular, the Plaintiff argues that the ALJ ignored evidence that she required pain treatment with narcotics medications.

Throughout the five-step process under the SSA, "'the subjective element of [plaintiff's] pain is an important factor to be considered in determining disability.'" Perez v. Barnhart, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002)(quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1989)). Notwithstanding this, a reviewing court must uphold the ALJ's decision to discount a plaintiff's subjective complaints if substantial evidence supports that determination. Rodriguez v. Barnhart, No. 05 Civ. 338 (SAS), 2006 WL 988201, *5 (S.D.N.Y. Apr. 13, 2006)(quoting Perez, 234 F. Supp. at 341).

When a plaintiff reports symptoms more severe than medical evidence alone would suggest, the ALJ must consider other factors in determining the claimant's credibility. Thus, even assuming there was a lack of objective medical evidence in the record supporting the Plaintiff's subjective complaints of pain, an ALJ "must" consider a broad array of factors in "assess[ing] the credibility of [an] individual's statements about symptoms and their effects." Wright v. Astrue, 2008 WL 620733, *3 (E.D.N.Y. Mar. 5, 2008)(quoting SSR 96–7p, 1996 WL 374186 (S.S.A. 1996)). These include: (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors

concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not credible to the extent they [we]re inconsistent with the [] residual functional capacity assessment." Tr. at 20. However, the Court finds that the ALJ failed to adequately address the import of the Plaintiff's continued reliance on certain pain medications, including Percocet, to deal with her facial pain. Indeed, the record reflects that the Plaintiff needed Percocet 10/325 as much as six times a day, even after several peripheral nerve block procedures. However, in his decision, the ALJ included little discussion of the Plaintiff's medications as related to the Plaintiff's credibility.

While the ALJ evaluated and relied upon the opinion of Dr. Acer, who, in turn, listed the Plaintiff's pain medications at the time of her report, there is nothing in that report to suggest that Dr. Acer addressed their significance. Instead, Dr. Acer, a consulting psychologist, focused on the existence of any psychiatric limitations.

Similarly unavailing is the Commissioner's claim that Dr. Burstein was aware of the Plaintiff's medications but nonetheless found that she was capable of performing the mental demands of work. Dr. Burstein performed a mental residual functional capacity assessment, Tr. 236-38, and did not purport to address the significance of the Plaintiff's subjective complaints of pain.

To be sure, an ALJ "is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate it was not considered." Barringer v. Commissioner of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005)(citation and quotations omitted); see also Brault v. Social Sec. Admin. Com'r, 683 F.3d 443, 448 (2d

Cir. 2012)("[a]n ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted")(internal quotations and citation omitted).

However, here, the Court finds that the ALJ did not adequately consider the extent to which the Plaintiff relied on potent pain medications, which did not entirely alleviate her pain. See Knox v. Astrue, 10-CV-38 (SLT), 2012 WL 1117849, at *17 (E.D.N.Y. Mar. 30, 2012)(noting that ALJ erred in part because failed to address the implications of strong medications taken by claimant); Delacruz v. Astrue, 10 CIV. 05749 (JGK), 2011 WL 6425109, at *20 (S.D.N.Y. Dec. 1, 2011)("By failing to discuss important parts of plaintiff's testimony and making an unsupported finding that plaintiff is less than credible, the ALJ failed in his duty to explain his rejection of evidence favorable to plaintiff. He erred in discounting her subjective complaints without adequate explanation."), report and recommendation adopted, 10 CIV. 5749 (JGK)(MHD), 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); Tiborsky v. Astrue, 07-CV-2770 (SLT), 2010 WL 2730791, at *19 (E.D.N.Y. July 8, 2010)(the ALJ "disregarded portions of the record and plaintiff's testimony in evaluating plaintiff's claims of pain.")

For the foregoing reasons, the Court finds that the ALJ erred in discounting the Plaintiff's subjective complaints of pain without adequate explanation.

E.  The ALJ Failed to Adequately Justify Rejecting Portions of Dr. Ruggiero's Opinion Favorable to the Plaintiff

Although the ALJ's failure to adequately justify discounting the Plaintiff's subjective complaints of pain constitutes an independent basis for reversal and remand pursuant to the fourth sentence of 42 U.S.C. § 405(g), to complete the record, the Court addresses the Plaintiff's final basis advanced for reversal.

"[A] treating physician's opinion about the nature and severity of a claimant's impairments is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Gorman v. Colvin, No. 13-CV-3227 (JG), 2014 U.S. Dist. LEXIS 16379, at *10 (E.D.N.Y. Feb. 10, 2014)(quoting 20 C.F.R. § 404.1527(c)(2)). Indeed, "the ALJ cannot rely solely on [the] RFCs [of the consulting examiners] as evidence contradicting the Treating Physician RFC. This is because an inconsistency with a consultative examiner is not sufficient, on its own, to reject the opinion of the treating physician." Moore v. Astrue, 07-cv-5207 (NGG), 2009 U.S. Dist. LEXIS 81449, at *33 n. 22 (E.D.N.Y. Aug. 21, 2009). "The Second Circuit has repeatedly stated that when there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" Harris v. Astrue, 07-CV-4554 (NGG), 2009 U.S. Dist. LEXIS 67009, at *40 (E.D.N.Y. July 31, 2009)(quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

Nevertheless, "[a]lthough the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)(citations omitted). However, "the Commissioner must set forth 'good reasons' for refusing to accord the opinions of a treating physician controlling weight." Gorman, at *10 (E.D.N.Y. Feb. 10, 2014)(quoting 20 C.F.R. § 404.1527(c)(2)). "She must also give 'good reasons' for the weight actually given to those opinions if they are not considered controlling." Id. (quoting Halloran, 362 F.3d at 33).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Id. In addition, "the regulations also specify that the Commissioner will always give good reasons in [his] notice of determination or decision for the weight [he] gives claimant's treating source's opinion." Id. (citations and internal quotation marks and alterations omitted).

Here, as noted above, the Plaintiff contends that the ALJ did not adequately justify give discounting portions of the opinion of Dr. Ruggiero, her treating physician. The Court agrees.

According to Dr. Ruggiero, the Plaintiff experienced mental confusion and an inability to concentrate as a result of her headaches, which he stated occurred several times a week. Tr. at 252-53. She needed to take unscheduled breaks during the day due to her headaches and could be expected to miss four days of work in a month. The ALJ framed these symptoms as "mental limitations" that were inconsistent with the findings of Drs. Acer and Burstein.

However, of importance, the etiology of the Plaintiff's symptoms was not a discernible psychiatric impairment, but a neurological one. Consequently, the fact that Drs. Acer and Burstein did not identify a particular mental impairment provides no basis to credit their findings over those of Dr. Ruggiero. In short, Dr. Ruggiero based his conclusions on the Plaintiff's symptoms of headaches and neuroglia, conditions that Dr. Acer had no qualifications to address in her capacity as a psychologist.

While genuine conflicts in medical evidence are for the Commissioner to resolve, when an ALJ accepts portions of a treating physician's opinions, and reject others, it must set forth his or her reasons for doing so. Here, the Court finds that the ALJ failed to adequately do so. For this reason, the Court remands this matter to the ALJ to either accord substantial weight to all of Dr. Ruggiero's opinion or more fully explain his reasons for not doing so.

F. <u>Attorneys' Fees</u>

A party who prevails in a civil action against the United States may seek an award of fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, the purpose of which is "to eliminate for the average person the financial disincentive to challenging unreasonable government actions." <u>Comm'r, I.N.S. v. Jean</u>, 496 U.S. 154, 163, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990)(footnote & citation omitted). In order for an award of attorneys' fees to be conferred, this Court must find that the plaintiff is a prevailing party; that the Commissioner of Social Security's opposition to the original motion to remand was without substantial justification; that no special circumstances exist that would make an award unjust; and that the fee petition was filed within thirty days of final judgment. 28 U.S .C. § 2412(d)(1)(B).

In this case, however, the Plaintiff failed to produce a contingent fee agreement or otherwise provide the Court with any documentation regarding her request for reasonable attorneys' fees. In any event, even were the Court to be provided with sufficient documentation in this regard, the Court would decline to award fees on the basis that the Commissioner's opposition to the Plaintiff's motion for judgment on the pleadings was not without substantial justification. <u>Senville v. Capka</u>, 2:03-CV-279 (WKS), 2008 WL 783530, at *2 (D. Vt. Mar. 21, 2008)("The government's position may be substantially justified under EAJA standards even if on the merits a court found it had acted arbitrarily and capriciously, if reasonable grounds for

disagreement existed at the time it took the position."), aff'd sub nom. Senville v. Madison, 331 F. App'x 848 (2d Cir. 2009). In other words, although the issues on which the government did not prevail controlled the outcome of this decision, overall the Commissioner's prelitigation conduct and its litigation position was substantially justified.

## IV.    CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied and the Plaintiff's cross-motion for judgment on the pleadings and for attorneys' fees expended in connection with this appeal is granted in part and denied in part. In particular, viewing the record as a whole, the Court finds that the ALJ failed to adequately justify that part of his decision discounting (1) the Plaintiff's subjective complaints of pain and (2) those portions of Dr. Ruggiero's opinion favorable to the Plaintiff.

To be sure, the Court is not finding that the ALJ's determination was not supported by substantial evidence. Rather, the Court is finding that further clarification of the ALJ decision is necessary. "Remand for further consideration . . . is the proper course when, [as here] . . . further findings and explanations would clarify the ALJ's decision." Amrod v. Comm'r of Soc. Sec., 5:08-CV-464 (DNH), 2010 WL 55934, at *20 n. 21 (N.D.N.Y. Jan. 5, 2010).

Therefore, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed, in part, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion. In particular, the Court directs the ALJ to accord greater weight to the (1) Plaintiff's subjective complaints of pain or more fully explain his reasons for not doing so and (2) above-mentioned portions of Dr. Ruggiero's opinion, or more fully explain his reasons for not doing so. The ALJ need not conduct a new hearing; rather, the ALJ may base his decision on the existing record.

The Court denies that part of the Plaintiff's motion for attorneys' fees.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2014

_____*Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge